2023 IL App (1st) 1211491-U

No. 1-21-1491

SIXTH DIVISION
April 28, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.  16 CR 02110 01 |
| | ) | |
| JAMES MATZKE, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Marc Martin, |
| | ) | Judge Presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Justices C.A. Walker and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court did not err in denying defendant's motion for discovery sanctions.

¶ 2    On April 15, 2015, Matzke was charged with two counts of felony driving while his driver's license was suspended or revoked.  He pled guilty on September 26, 2017, to one count of felony driving while his driver's license was suspended or revoked, pursuant to a negotiated plea. He was sentenced to 18 months' imprisonment.  On February 1, 2021, Matzke filed a motion to withdraw his negotiated plea of guilty, which the court granted.  Thereafter, on November 19, 2021, Matzke agreed to a stipulated bench trial.  At trial, Matzke was found guilty of one count of felony driving while his driver's license was suspended or revoked and was sentenced to 18 months' imprisonment, timed considered served. It is from this judgment that Matzke now appeals and argues that the circuit court erred in denying his motion for discovery sanctions.  We affirm.

¶ 3                    I. BACKGROUND

¶ 4    In April of 2015, prior to his guilty plea, Matzke filed a motion to quash arrest and suppress evidence. At a hearing on the motion, Matzke called Palatine Police Officer Patricia Pierce to testify. Officer Pierce testified that on April 15, 2015, around 8:28 a.m., she was on routine patrol near Palatine and Rohlwing Roads in Palatine, Illinois. She was in the parking lot of a church when she saw Matzke's vehicle heading northbound in the 100 block of South Rohlwing Road, approximately one block from the intersection. Officer Pierce pulled her marked squad car out behind Matzke's vehicle. As her car and that of Matzke's were approaching the intersection at Palatine and Rohlwing Roads, the color of the traffic light changed from yellow to red.  Officer Pierce observed Matzke's vehicle cross the crosswalk, enter the intersection, and make a left turn against the red traffic signal. Officer Pierce turned on her emergency lights and

followed behind Matzke. Matzke pulled over less than a block away with Officer Pierce behind him. Matzke exited his vehicle and told Officer Pierce that he was having a medical emergency. Officer Pierce called paramedics to the scene and Matzke was transported to the hospital.

¶ 5     Officer Pierce went to the hospital the following day and spoke to Matzke. Officer Pierce requested that Matzke come to the police station after being released from the hospital. Officer Pierce explained to Matzke that his license was revoked, and Matzke acknowledged that he knew that his license was revoked. Matzke agreed to go to the police station after being released from the hospital. When he arrived at the police station, Matzke was arrested for driving with a revoked or suspended license.

¶ 6     Officer Pierce testified that her police car is equipped with video recording equipment and when initiating a traffic stop, she turns on her emergency lights and the video equipment automatically activates. The video includes the preceding 30 seconds prior to when the lights were engaged. When asked whether her video equipment engaged when she activated her lights, Officer Pierce responded, "It should have, yes." She further stated, "I don't know whether it did or didn't. It should have. We don't usually go back and look at video on basic traffic stops for any reason. Like there would be no reason for me to do that." When asked what happened to the video from her interaction with Matzke, Officer Pierce responded, "It's normally stored. Every traffic stop that we make, every time we engage the video system, it's stored on the memory hard drive" in the vehicle. When the vehicle returns to the police station, the video is downloaded "to a system that our station has and then they would in turn burn a DVD if it was necessary for a case." There was no procedure for an officer to request that a stop be downloaded and transferred to DVD. It was the decision of the property custodian to decide "which DVD's he

needs for which cases and the only ones we are told that we have to pull are for DUI's. We are not told to pull or burn DVD's for revoked, suspended or no valid arrests. So the only time I think that would be done is if it was subpoenaed for."

¶ 7     The court denied Matzke's motion to suppress.  In so ruling, the trial court stated:

"[Officer Pierce] saw him commit a traffic violation. [Matzke] did not have a license which is an arrestable offense in and of itself and learned at that time that his license was revoked. All right. That I think is the evidence that the State is going to produce that this witness saw this defendant driving, and it will subsequently -- and it will be established subsequently that he was revoked at the time."

¶ 8     On August 3, 2016, Matzke filed a motion for sanctions claiming that the absence of the police squad car video recording hindered his ability to put forth a defense and confront his accusers. Specifically, Matzke alleged that Palatine police officers are required by department procedure to record all traffic stops and that during his traffic stop and his subsequent arrest "no video or audio was ever recorded" and that "no exigent circumstances existed at the time of the traffic stop." Matzke further claimed that he subpoenaed the police video and audio recording, but no video or audio recording was ever produced.

¶ 9     The State responded to the written motion and argued that the video and audio recording was properly kept by the Palatine police department per their policy of maintaining the recording for a 90-day period.  During those 90-days, there was no preservation order entered regarding the video and, therefore, the police department no longer had an obligation to retain the recording. The State included a letter from the Palatine police department, dated August 22, 2016, which stated that "[t]he squad video was not requested with a preservation order, and [the police] server

only holds material for approximately 90 days. Therefore, the Palatine Police Department is no longer in possession of the squad video for this arrest."

¶ 10     At the hearing on the motion for sanctions, Matzke argued that the charges should be dismissed because the video taken of his traffic stop had been destroyed by the Palatine police department. Matzke's counsel stated that there was a subpoena placing the police department on notice. The State argued that the Palatine police department did not receive a preservation order during the 90-day period that the recording was maintained, and it was then recorded over as was routine practice in the department. It was unknown exactly when the video was destroyed. The trial court could not locate a subpoena in its file, nor was defendant able to produce a copy of the purported subpoena.

¶ 11     In ruling on Matzke's motion for sanctions, the trial court stated:

"We can only assume that on or about July 30, 2015, that the DVD, if one exists - and I will assume that one exists for the sake of this motion- the DVD would have been destroyed in the normal ordinary course of the police general orders. Again, in reviewing the file, from April 15, 2015, until July 30, 2015, there was no request whatsoever upon the Court, nor upon the State, nor upon the police department to preserve that tape, and thereafter, it was destroyed in the normal and ordinary course of the Palatine police procedures.

Now, the matter was finally upgraded to a felony on February 3, 2016, and I note that on March 9, 2016, the defendant filed a motion for pretrial discovery. In reviewing that motion for pretrial discovery, I also note that nowhere does it request either the production of, nor the preservation of, any DVD. To this day there is no request or

motion to preserve and produce that DVD."

¶ 12    The court then discussed when sanctions are appropriate.  The court stated that due process is violated when the police have knowledge of the evidence's apparent or potential exculpatory value, the evidence is destroyed in bad faith, and the evidence cannot be obtained through other comparable means.  The trial court then stated that in this case it did not matter whether Matzke went through a red light because he was being charged with driving with a revoked or suspended license. The trial court further stated that "what is relevant is whether or not [Matzke] was driving," which is "not something so unique that it cannot be duplicated by other evidence; specifically, the testimony of the police officer that he saw him driving." The trial court then denied the motion for sanctions, stating:

> "[A] DVD is invaluable in a DUI case, but it is not invaluable to prove whether or not someone was or was not driving an automobile. It is completely different. It was merely a matter of identifications; it is not a matter of how the defendant drove, how long the defendant drove, nor anything else.
>
> And, so, I find that for a misdemeanor 6-303, the police department had no reason to believe that this was exculpatory evidence, or even potential exculpatory evidence, in prosecuting a 6-303, a misdemeanor 6-303. Not having received any notification or notice of any kind that this DVD should be maintained, they went ahead and destroyed it pursuant to their general orders and their general procedures. I find that there is no evidence of bad faith in so doing.
>
> So I find that this motion for sanctions fails on many counts: There is no showing of materiality; there is no showing of bad faith; there is no showing that the evidence

cannot be duplicated through testimony."

¶ 13    Thereafter, on September 26, 2017, the parties reached a negotiated plea agreement. The parties agreed that Matzke would plead guilty on count one for felony driving on a revoked license in exchange for sentence of 18 months' imprisonment.  Matzke pled guilty, waived his right to a jury, and waived his right to a presentence investigation report. As part of the factual basis of the plea, it was stipulated that if the matter proceeded to trial, Officer Pierce would have testified that on April 15, 2015, in the area of 225 South Rohlwing Road in Palatine, Cook County, Illinois, she stopped a vehicle for a minor traffic violation. Officer Pierce would have identified Matzke in court as the driver of that vehicle. Officer Pierce would further have testified that Matzke was unable to provide a valid driver's license and was later placed under arrest. It was further stipulated that the People would have introduced into evidence a certified driving abstract for Matzke which showed that on April 15, 2015, Matzke's driving privileges were revoked or suspended based on a prior conviction for driving under the influence of alcohol ("DUI"). Additionally, the evidence would have shown that Matzke had four prior convictions for driving on a revoked or suspended license where the basis for the revocation or suspension was a prior DUI.

¶ 14    On October 31, 2017, Matzke filed a *pro se* motion for an extension of time to file a motion to withdraw his guilty plea and vacate sentence. On February 1, 2021, Matzke, through new appointed counsel, filed a "Supplemental Motion to Withdraw Negotiated Plea of Guilty." In this motion, Matzke claimed that his plea was not made knowingly, freely, or voluntarily because: 1) the court erred in denying his pre-trial motion to quash arrest and suppress evidence and his motion for sanctions because it ruled that the video was not material; 2) he received

ineffective assistance of trial counsel because counsel failed to file a preservation order to preserve the video and counsel failed to inform him of his right to proceed by way of stipulated bench trial to preserve issues for appeal; 3) he relied upon Officer Pierce's misrepresentations as to when the Palatine police department preserves video recordings; 4) he relied upon the State's misrepresentation that the failure to preserve the video recording was lawful and proper; and 5) he was prejudiced by the State's failure to proceed to a preliminary hearing until nearly one year after his arrest.

¶ 15    Matzke included with his motion General Order TRF-09 from the Palatine police department that details the police department's policy and procedures concerning video and audio recordings. The portions concerning digital video evidence state:

> "Video segments that contain information on incidents such as an arrest, physical or verbal altercations, pursuits, assaults or any other incident that will aid in the investigation will be treated as evidence.
>
> The officer will be responsible for submitting a property inventory sheet to the Property Officer. It will be the responsibility of the Video Processing/Property Custodian to review the segment and duplicate and/or preserve the video segment as evidence.
>
> All recordings not being retained as evidence will be maintained on the department server for a period of sixty (60) days. If a recording is not being preserved, it shall be automatically purged after the sixty (60) day period."

¶ 16    The general order also stated that "[v]ideo segments will only be released to attorneys upon the presentation of a valid subpoena issued by the court of jurisdiction."

¶ 17    On November 19, 2021, the court granted Matzke's motion to withdraw his guilty plea

and the parties agreed to a stipulated bench trial with the understanding that the finding would be *nunc pro tunc* to September 26, 2017, for a sentence of time considered served. At the stipulated bench trial, the parties stipulated that Officer Pierce would testify consistent with her testimony at the motion to suppress that Matzke's driver's license had been revoked on the date in question for a prior DUI and that he had previously been convicted of driving on a revoked or suspended license on four prior occasions.

¶ 18   The court then found Matzke guilty of one count of felony driving on a suspended or revoked license and sentenced him to 18 months' imprisonment, time considered served. Matzke made an oral motion for new trial, adopting his arguments set forth in his motion to withdraw his plea of guilty, which was denied.

¶ 19   This appeal followed.

¶ 20                                II. ANALYSIS

¶ 21   Matzke argues that the trial court erred in denying his motion for sanctions based on noncompliance with the Illinois Eavesdropping Act (Act) (720 ILCS 5/14-3 (h-15) (West 2018)). Matzke claims that without this video, he was denied the ability to demonstrate that either he did not commit, or that Officer Pierce did not see him commit, a moving violation, which was the basis for the traffic stop that eventually culminated in his arrest.[1]  According to Matzke, the State's failure to comply with the mandatory requirements of the Act should have resulted in the exclusion of Officer Pierce's testimony.

¶ 22   Later in his brief before this court, Matzke seems to suggest that the video was necessary

---

[1] Matzke's defense theory is unclear because he, at once, argues in his briefs that he did not commit a moving violation *and* that Officer Pierce *did not see him* commit a moving violation.

to successfully litigate his motion to suppress  In a one-sentence argument, Matzke claims that the trial court "should have barred Officer Pierce's testimony regarding the traffic stop, without which the State would not have been able to prove the legality of the stop and the evidence obtained as a result, *i.e.*, Matzke's suspended driver's license", and cites *People v. Gaytan*, 2015 IL 116223, ¶ 20 in support. In *Gayton*, our supreme court stated that "[i]f reasonable suspicion is lacking, the traffic stop is unconstitutional and any evidence that was obtained as a result of the stop is generally inadmissible."  This one-sentence argument is entirely undeveloped and therefore we will not address it on its merits.  See *People v. Lacy*, 407 Ill. App. 3d 442, 459 (2011) (undeveloped, one-sentence argument is forfeited).

¶ 23    The State argues that there was no discovery violation and no violation of section 14-3 of the Act.  The State urges that Matzke did not make a request for discovery any time between his arrest and when the video was destroyed 90 days later.  Furthermore, the State argues that there was no violation of the Act because any video would merely show the traffic stop on April 15th, not Matzke's arrest for driving on a revoked license at the police station days later after Matzke was released from the hospital.  The State also argues that even if there was a discovery violation in this case, sanctions would not be proper where the Act is directory.  Finally, and seemingly in response to Matzke's one-sentence argument that the court should have barred Officer Pierce's testimony during the motion to suppress, the State argues that, irrespective of the legality of the traffic stop, Matzke admitted to Officer Pierce at the hospital that he knew that his driver's license was revoked, which was corroborated by his driving abstract. Thus, the "fruit-of-the-poisonous-tree" doctrine does not apply because Matzke's admission derives from an independent source.  See *People v. Babolcsay*, 368 Ill. App. 3d 712, 715 (2d Dist. 2006) ("The

fruit-of-the-poisonous-tree doctrine is meant to prevent the admission of evidence obtained as a result of illegal conduct, not evidence obtained from an independent source.")

¶ 24    A discovery violation can arise as either a due process violation or a violation under Illinois Supreme Court Rule 415(g)(i) (eff. Oct. 1, 1971)[2]. *People v. Borys*, 2013 IL App (1st) 111629, ¶ 17.  When evidence is potentially useful but not "material exculpatory evidence," a due process violation arises only if the defendant can show that the State acted in bad faith. *Id*.; see also *Illinois v. Fisher*, 540 U.S. 544, 545, 548-49 (2004) (failure to preserve white powdery substance so that the defendant charged with unlawful possession of cocaine could test it was not a due process violation, because, among other things, such testing would be only potentially useful and not material exculpatory evidence).

¶ 25    Matzke's argument on appeal is limited to the court's failure to impose sanctions.  His argument presupposes that a discovery violation did in fact occur based solely on his belief that the failure to preserve the video constituted a violation of the requirements of section 14-3 of the Act (720 ILCS 5/14-3(h-15) (West 2016)).  However, the trial court did not find that a discovery violation occurred in this case.  Rather, the trial court found that no due process violation occurred because the video was not "exculpatory evidence, or even potential exculpatory evidence" and the State did not act in bad faith.

¶ 26    "Sanctions are intended to accomplish the purpose of discovery, not to punish the offending party, and the imposition thereof should not encroach on a party's right to a fair trial." *People v. Scott*, 339 Ill. App. 3d 565, 572 (2003).  In addition, "[f]ew rights are more

---

[2]    Matzke has specifically stated that he is not arguing that the State violated Rule 415(g)(i),

fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). Therefore, the exclusion of certain testimony as a sanction for a discovery violation is disfavored, "and is appropriate in only the most extreme situations." *Scott*, 339 Ill. App. 3d at 573. A circuit court's ruling on a motion for discovery sanctions is reviewed under the abuse of discretion standard. *People v. Kladis*, 2011 IL 110920, ¶ 23. An abuse of discretion exists only where the trial court's decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003).

¶ 27    Relevant to this case, section 14-3 of the Act mandates that:

"Recordings made under subsection (h), (h-5), or (h-10) shall be retained by the law enforcement agency that employs the peace officer who made the recordings for a storage period of 90 days, unless the recordings are made as a part of an arrest or the recordings are deemed evidence in any criminal, civil, or administrative proceeding and then the recordings must only be destroyed upon a final disposition and an order from the court. Under no circumstances shall any recording be altered or erased prior to the expiration of the designated storage period. Upon completion of the storage period, the recording medium may be erased and reissued for operational use." 720 ILCS 5/14-3(h-15) (West 2016).

¶ 28    During the hearing on the motion for sanctions, the State indicated that the Palatine police department had deleted the video of Matzke's arrest after 90 days in accordance with department policy. The Palatine police department confirmed that its "server only hold[s] material for approximately 90 days. Therefore, the Palatine Police Department is no longer in

possession of the squad video for this arrest."

¶ 29    Matzke relies on *People v. Kladis*, 2011 IL 110920, in support of his argument that the trial court erred in failing to impose sanctions. In *Kladis*, the defendant was charged with DUI, and her driver's license was summarily suspended. 2011 IL 110920, ¶ 3. Five days after her arrest and 25 days before her first court date, she filed a petition to rescind the statutory summary suspension and requested that the State produce any videos of her. *Id*. The police department's policy was that the videos were automatically erased within 30 days of the arrest.  The video of the defendant's traffic stop was erased hours before the first court appearance. *Id*. ¶ 6.  The trial court barred the arresting officer from testifying about what would have been shown on the video as a discovery sanction for the State's failure to preserve and produce the video in the summary suspension hearing. *Id*. ¶¶ 9, 11.

¶ 30    At the hearing on defendant's petition to rescind her statutory summary suspension the trial court held that the arresting officer had no probable cause to stop, detain, and arrest the defendant. *Id*. Therefore, the court granted her petition to rescind the statutory summary suspension.  *Id*. The State appealed the sanctions ruling in the statutory summary suspension proceedings but later voluntarily dismissed that appeal. *Id*. ¶ 14. After defense counsel moved to quash arrest and suppress evidence in the defendant's DUI case, the trial court barred the arresting officer from testifying about anything that would have been shown on the video.  *Id*. ¶ 15.

¶ 31    Our supreme court noted that the State did not dispute that it was placed on notice by the defendant to produce the video of her stop and arrest in the statutory summary suspension proceedings. *Id*. ¶ 20.  The court further noted that the State did not contest the fact that its

failure to preserve the video resulted in the destruction of the video and agreed that the sanction was proper in the statutory summary suspension proceedings. *Id.* However, the State argued that pursuant to *People v. Schmidt*, 56 Ill. 2d 572 (1974), it had no obligation to produce the video in the misdemeanor DUI case. *Id.* ¶ 21. Therefore, the State argued, its failure to preserve the video did not warrant a sanction in the DUI case and the trial court abused its discretion in imposing a sanction. *Id.*

¶ 32 The *Kladis* court held that the State's failure to preserve and produce the video constituted a discovery violation as these videos are discoverable in misdemeanor DUI cases. *Id.* ¶ 29. The court noted that these videos were relevant and admissible to show what transpired at the traffic stop. *Id.* The court therefore held that the trial court did not abuse its discretion in finding that the video was subject to discovery. *Id.* ¶ 39. The court also held that the trial court properly exercised its discretion in narrowly tailoring its sanction order to bar the State from introducing testimony regarding what was contained in the video. *Id.* ¶ 45.

¶ 33 We find *Kladis* factually distinguishable from the instant case. First, unlike *Kladis*, the trial court did not make a finding that a discovery violation occurred. The video at issue here was not identified as evidence by either party within the 90-day time frame from the date of Matzke's arrest to the date when the video would have been destroyed by the Palatine police department. As stated, Matzke was originally charged with misdemeanor driving on a suspended license. He was not indicted on the felony charge until February of 2016 and a formal discovery request was not made until April of 2016, one year after Matzke's arrest. In addition, there was no preservation order entered at any time and there was no record of any subpoena by the defense. The video was destroyed sometime after the expiration of the 90-day holding period as

14

part of the Palatine police department's policy and procedure.

¶ 34     Second, the video was not material exculpatory evidence, potentially exculpatory evidence, or even useful to Matzke.  Although the video presumably would have shown whether Matzke ran the red light, it was completely unrelated to Matzke's ultimate arrest for driving on a revoked license.  As the court noted, "it is immaterial whether or not [Matzke] went through a red light at this time" and that there was "no reason to believe that [the video] was exculpatory evidence or even potential exculpatory evidence" as this case was merely a matter of identification as to whether Matzke was driving.  Matzke does not dispute that he was driving the vehicle when he was stopped by Officer Pierce.  He similarly does not dispute that he subsequently admitted to Officer Pierce while he was in the hospital that his license had been revoked.  Officer Pierce testified Matzke was the driver of the vehicle and the sole occupant. She also testified that she spoke with Matzke at the hospital the following day and that he admitted to her that he knew his license was revoked.  Matzke's arrest did not occur until a few days later when Matzke voluntarily came to the police station after being discharged from the hospital.

¶ 35     Third, even if the video was discoverable or useful, there was no evidence that the police acted in bad faith in destroying the video. Law enforcement's destruction of, or failure to preserve " 'potentially useful evidence' " is not a due process violation where the defendant cannot demonstrate bad faith on the part of law enforcement. *People v. Hobley*, 159 Ill. 2d 272, 307 (1994) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). Bad faith "implies a furtive design, dishonesty, or ill will." *People v. Danielly*, 274 Ill. App. 3d 358, 364 (1995). Here, the police did not act in bad faith where the record shows that they complied with the requirements

of section 14-3 of the Act. 720 ILCS 5/14-3(h-15) (West 2016).

¶ 36    Matzke was not arrested at the time of the traffic stop. On the contrary, he was transported to a hospital by paramedics because he was experiencing a medical emergency. Matzke was only arrested for driving on a revoked license when he came to the police station "two or three days later" under his own volition, not for running the red light at Palatine and Rohlwing Roads in Palatine a few days earlier. This arrest occurred "two or three days" after Matzke admitted to Officer Pierce that he knew his driver's license had been revoked, and at least four days after the traffic stop. The Palatine police department would have had no reason to believe that the video of the initial stop was made as "part of an arrest," or that it contained potentially exculpatory evidence in prosecuting a misdemeanor driving on a suspended or revoked license. If anything, it would have showed potentially inculpatory evidence. We therefore find that the trial court did not abuse its discretion in failing to impose sanctions for the destruction of the video showing Matzke's traffic stop.

¶ 37                       III. CONCLUSION

¶ 38    Based on the foregoing, the judgment of the circuit court is affirmed.

¶ 39    Affirmed.

1-21-1491